Citation Nr: 1438760 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 96-07 913 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES

1. Entitlement to an increased rating for the residuals of head trauma with posttraumatic headaches, currently evaluated as 40 percent disabling.

2. Entitlement to an increased rating for right foot calluses, currently evaluated as 10 percent disabling.

3. Entitlement to an increased rating for left foot calluses, currently evaluated as 10 percent disabling.

4. Entitlement to an increased rating for subtalar and degenerative changes of the right ankle, currently evaluated as 10 percent disabling.

5. Entitlement to an increased rating for subtalar and degenerative changes of the left ankle, currently evaluated as 10 percent disabling.

6. Whether new and material evidence has been received to reopen the claim of entitlement to service connection for a psychiatric disorder, to include as secondary to his service-connected bilateral foot calluses, bilateral ankle disability, and the residuals of a head trauma.

7. Entitlement to a total disability evaluated based upon individual unemployability (TDIU) due to service-connected disabilities.


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

K. Osegueda, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1977 to August 1977 and from February 1979 to September 1979. This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas.

In August 2008, the Board denied both the Veteran's claims of entitlement to service connection for an acquired psychiatric disorder and TDIU. The Veteran appealed this decision to the United States Court of Appeals for Veterans Claims (Court). In September 2009, the Court granted a Joint Motion for Remand (JMR) filed by the parties and vacated and remanded the Board's August 2008 decision. In April 2010, the Board remanded the claims for further development. 

In January 2013, the Veteran revoked his attorney's representation. A power of attorney may be revoked at any time. 38 F.R. § 14.631(f)(1) (2013). Therefore, the Board notes that the Veteran is unrepresented in his appeal.

In February 2014, the Veteran testified before the undersigned Veterans Law Judge at a hearing at the RO. A transcript of the hearing has been associated with the record. 

In addition to the paper claims file, there are Virtual VA and Veterans Benefits Management System (VBMS) paperless files associated with the case. A review of the documents in the electronic files reveals VA treatment notes, the February 2014 hearing transcript, and other documents relevant to the issues on appeal. 

The issues of whether new and material evidence has been received to reopen claims of entitlement to service connection for degenerative arthritis of the right knee, degenerative arthritis of the left knee, degenerative disc disease of the lumbar spine, a right shoulder disability, and hypertension; entitlement to service connection for a bilateral leg disorder, a right arm disorder, and a hand disability; entitlement to the waiver of recovery of an overpayment of service-connected compensation benefits based on VA's classification of the Veteran as a fugitive felon from June 19, 2010 to March 24, 2011; and entitlement to specially adapted housing have been raised by the record, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2013). 

The issues of entitlement to increased ratings for the residuals of head trauma with posttraumatic headaches, right foot calluses, left foot calluses, subtalar and degenerative changes of the right ankle, subtalar and degenerative changes of the left ankle; entitlement to service connection for a psychiatric disorder; and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. In an April 1997 rating decision, the RO denied service connection for a psychiatric disorder; specifically, posttraumatic stress disorder (PTSD).

2. The Veteran was notified of the April 1997 rating decision and of his appellate rights, but he did not appeal that determination. There was also no evidence received within one year of that determination. 
 
3. The evidence received since the April 1997 rating decision, by itself, or in conjunction with previously considered evidence, relates to an unestablished fact necessary to substantiate the claim for service connection for a psychiatric disorder.


CONCLUSIONS OF LAW

1. The April 1997 rating decision, which denied service connection for PTSD, is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 3.156, 20.200, 20.201, 20.302, 20.1103 (2013). 

2. The evidence received subsequent to the April 1997 rating decision is new and material, and the claim for service connection for a psychiatric disorder is reopened. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156(a) (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Initially, the Board observes that the Veteran's claim of service connection for a psychiatric disorder (specifically, PTSD) was previously considered and denied by the RO in a rating decision dated in April 1997. The Veteran was notified of that decision and of his appellate rights; however, he did not submit a notice of disagreement. In general, rating decisions that are not timely appealed are final. See 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103. There was also no evidence received within one year of the issuance of the decision. Therefore, the rating decision is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 3.156(b), 20.200, 20.201, 20.302, 20.1103 (2013).

In July 1999, the Veteran essentially requested that his claim of service connection for a psychiatric disorder be reopened. Specifically, he claimed that he had depression secondary to his service-connected bilateral foot calluses, bilateral ankle disability, and headaches. In a December 1999 rating decision, the RO essentially reopened the claim and denied service connection for dysthymia and major depression. Nevertheless, the Board has a jurisdictional responsibility to consider whether it is proper for a claim to be reopened, regardless of how the RO ruled on the question of reopening. Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001).

As noted above, the April 1997 rating decision denied the Veteran's claim of service connection for PTSD. The evidence of record at that time included the Veteran's service treatment records and a letter from the RO requesting stressor information. In that decision, the RO found that the Veteran's service treatment records contained no evidence of treatment for or a diagnosis of a chronic psychiatric disorder. In addition, the RO noted that the Veteran did not reply to the RO's request for stressor information. 

The evidence associated with the claims file subsequent to the April 1997 rating decision includes various statements submitted by the Veteran, VA treatment notes, VA examination reports, and the Veteran's hearing testimony. The Board has thoroughly reviewed the evidence associated with the claims file subsequent to the April 1997 rating decision and finds that this evidence constitutes new and material evidence which is sufficient to reopen the previously denied claim for service connection for a psychiatric disorder. 

The majority of this evidence is certainly new, in that it was not previously of record and is not cumulative or redundant of the evidence already considered. With regard to whether the evidence is material, the Board notes that the new evidence includes VA treatment notes and statements from the Veteran that describe depression related to his service-connected disabilities. In addition, in a January 2014 statement included in the Veteran's VBMS claims file, he alleged that he was sexually assaulted during service in 1997. Therefore, the evidence relates to an unestablished fact necessary to substantiate the claim. 

Moreover, for purposes of reopening a claim, the credibility of newly submitted evidence is generally presumed. See Justus v. Principi, 3 Vet. App. 510, 513 (1992). Accordingly, the Board finds that new and material evidence has been presented to reopen the Veteran's previously denied claim of service connection for an acquired psychiatric disorder. However, as will be explained below, the Board is of the opinion that further development is necessary before the merits of the Veteran's claim can be addressed.


ORDER

New and material evidence having been submitted, the claim of entitlement to service connection for a psychiatric disorder is reopened.


REMAND

The law provides that VA shall make reasonable efforts to notify a claimant of the evidence necessary to substantiate a claim and requires VA to assist a claimant in obtaining that evidence. 38 U.S.C.A. § 5103, 5103A) (West 2002); 38 C.F.R. § 3.159. The Court has held that the failure by the Board to enforce compliance with the requirements of 38 U.S.C.A. § 5103(a) is remandable error. Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002).

Regarding all claims, remand is required to attempt to obtain federal records. During a March 2006 VA joints examination, the Veteran reported that he received Social Security Administration (SSA) disability benefits for psychiatric disorders and his feet. The Board notes that the AOJ has made previous attempts to obtain copies of the SSA decision granting disability benefits and the medical records that the decision was based upon; however, SSA has provided negative responses to the requests. The last determination that the records were unavailable was in 2011; since that time, the Veteran has indicated that he intended to reapply for SSA. On remand, the AOJ should make further attempts to obtain copies of any available SSA records and associate them with the record.

Remand is required regarding the claim for psychiatric disorder. In January 2014, the Veteran submitted a statement in which he alleged that he was the victim of sexual abuse during service. It does not appear that the Veteran has been provided adequate notice for his claim for service connection for a psychiatric disorder, to include PTSD based on personal assault. VA will not deny a PTSD claim that is based on in-service personal assault without first advising the claimant that alternative evidence from sources other than the Veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor. The Veteran should also be offered the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence. 38 C.F.R. § 3.304(f)(5); Bradford v. Nicholson, 20 Vet. App. 200 (2006); Patton v. West, 12 Vet. App. 272, 281-82 (1999). Therefore, a remand is necessary to ensure that the Veteran is provided a proper notice letter for the PTSD personal assault issue encompassed in the broader claim for service connection for an acquired psychiatric disorder. 

Remand is required to provide the Veteran with current and relevant examinations for the increased evaluation claims. The Board notes that the Veteran was last afforded VA feet, ankles, and headache examinations in January 2012 in connection with his increased rating claims. Regarding the Veteran's headaches, in an August 2014 deferred rating decision, the RO noted that the Veteran was hospitalized from June 4, 2014 to June 6, 2014 for head trauma resulting in a skull fracture. It does not appear that any VA examination has been conducted since that time to evaluate the effect of the Veteran's new closed head injury on his service-connected residuals of head trauma with headaches. In addition, the most recent VA treatment notes associated with the record are dated in 2012.

Regarding the lower extremity disabilities, in 2013, the Veteran reported that they had worsened. See 38 C.F.R. § 3.326 (a) (2013); Weggenmann v. Brown, 5 Vet. App. 281, 284 (1993). Thus, current examinations should be provided. 

Remand regarding the psychiatric disorder is also required for an adequate examination. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). An August 2012 VA examiner did not address the Veteran's complaints of depression related to his service-connected disabilities and provide a rationale for his opinion; he merely stated his opinion that it was not secondary to his service-connected disabilities. In addition, since that time, as noted above, in a January 2014 statement, the Veteran alleged that he had been the victim of sexual assault during service. 

While on remand, recent VA and private treatment records should also be obtained and associated with the claims file. 38 C.F.R. § 3.159(c)(2). 

The Board also finds that any decision with respect to the Veteran's increased rating and service connection claims remanded herein may affect the claim for TDIU. Therefore, the claims are inextricably intertwined. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision cannot be rendered unless both are adjudicated). As the claims should be considered together, it follows that any Board action on the TDIU claim, at this juncture, would be premature. Therefore, a remand of this entire matter is warranted.

Accordingly, the case is REMANDED for the following action:

1. Attempt to obtain a copy of any decision to grant SSA benefits to the Veteran and the records upon which that decision was based and associate them with the claims file. If the search for such records has negative results, the claims file should be properly documented as to the unavailability of those records.

2. Send the Veteran a notice letter in connection with his claim for service connection for an acquired psychiatric disorder, to include PTSD based, in part, on an alleged in-service personal assault. The letter should (1) inform him of the information and evidence that is necessary to substantiate the PTSD claim based on personal assault; (2) inform him about the information and evidence that VA will seek to provide; and (3) inform him about the information and evidence that he is expected to provide. 

Specifically, this letter should be compliant with 38 C.F.R. § 3.304(f)(5), advising the Veteran of specific examples of alternative forms of evidence to corroborate his account of an in-service assault and that behavioral changes may constitute credible supporting evidence of the stressor. This letter should also include a VA Form 21-0781a (Statement in Support of Claim for PTSD Secondary to Personal Assault).

3. Request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for his claimed psychiatric disorder and his service-connected feet, ankle, and headache disabilities. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

4. Contact the appropriate VA Medical Center and obtain and associate with the paper or virtual claims file all outstanding records of treatment, specifically, records beginning from 2012.If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

5. After securing the above VA treatment records and any other additional evidence, afford the Veteran a VA feet examination to ascertain the current severity and manifestations of his service-connected bilateral foot calluses. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file. 

It should be noted that the Veteran is competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation. 

The examiner should comment on the severity of the Veteran's bilateral foot calluses and report all signs and symptoms necessary for rating the disorder. In particular, he or she should opine as to whether the Veteran's calluses are moderate, moderately severe, or severe. 

6. After securing the above VA treatment records and any other additional evidence, afford the Veteran a VA ankles examination to ascertain the current severity and manifestations of his bilateral ankle disabilities. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file. 

It should be noted that the Veteran is competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should comment on the severity of the Veteran's bilateral ankle disabilities and report all signs and symptoms necessary for rating the disorder. In particular, he or she should provide the range of motion in degrees, indicate whether there is any form of ankylosis, and state whether any limitation of motion of the ankles is moderate or marked.

The presence of objective evidence of pain, excess fatigability, incoordination, and weakness should also be noted, as should any additional disability due to these factors, including additional loss of range of motion. The examiner should specifically discuss any additional functional impairment that the Veteran experiences during a flare-up or upon repetitive motion. 

7. After securing the above VA treatment records and any other additional evidence, afford the Veteran a VA headaches examination to ascertain the current severity and manifestations of his residuals of head trauma with traumatic headaches. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file. The examiner must conduct both a headaches examination and a residuals of TBI examination.

It should be noted that the Veteran is competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should comment on the severity of the Veteran's headache disability and report all signs and symptoms necessary for rating the disorder. In particular, he or she should comment as to whether the Veteran experiences migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. He or she should also discuss any cognitive impairment from the residuals of head trauma.

He or she should address whether the Veteran's closed head injury in June 2014 had any impact on the Veteran's service-connected residuals of head trauma with traumatic headaches; and if so, to what degree.

8. After securing the above VA treatment records and any other additional evidence, afford the Veteran a VA examination to determine the nature and etiology of any current psychiatric disorder. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and statements. 

It should be noted that the Veteran is competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner is requested to identify all current psychiatric disorders. He or she should specifically indicate whether the Veteran has PTSD.

For each psychiatric diagnosis identified other than PTSD, the examiner must opine whether it is at least as likely as not that the disorder manifested in service or is otherwise causally or etiologically related to his military service. In addition, he or she must provide an opinion as to whether it was caused or aggravated by the Veteran's service-connected disabilities.

Regarding PTSD, the AOJ must provide the examiner with a summary of any verified in-service stressors, and the examiner must be instructed that only these events and any personal assault he or she determines to have occurred in service may be considered for the purpose of determining whether exposure to an in-service stressor has resulted in PTSD. If there is a verified stressor or if he or she determines that a personal assault occurred in service, the examiner must determine whether the diagnostic criteria to support the diagnosis of PTSD have been satisfied. If the PTSD diagnosis is deemed appropriate, the examiner must then comment upon the link between the current symptomatology and any verified in-service stressor, including personal assault.

Regarding the personal assault, the examiner must elicit from the Veteran a detailed history of the alleged in-service events, and the Veteran's post-service medical and psychiatric history. Based on the review of the claims file and the results of the examination, the examiner is requested to provide an opinion as to whether it is at least as likely as not (i.e., a probability of at least 50 percent or more) that the Veteran exhibited symptoms and behaviors consistent with behavioral changes expected to follow from the claimed personal assault, and if so, whether any of his current psychiatric diagnoses, to include PTSD and/or other psychiatric disorder, are related to the alleged incident(s). 

9. After the development requested has been completed, review the examination reports to ensure that they are in compliance with the directives of this remand. If the report is deficient in any manner, the AOJ should implement corrective procedures. 

10. After completing the above actions, conduct any other development as may be indicated as a consequence of the actions taken in the preceding paragraphs. The RO must consider whether a social and industrial survey should be conducted for the Veteran's TDIU claim.

11. After all such development and adjudication has occurred, readjudicate the remaining claims on appeal. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran. After the Veteran has had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).




______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs